## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 339 | **DATE** | 11/1/2011 |
| **CASE TITLE** | Tygris Asset Finance, Inc vs. Abboud et al | | |

**DOCKET ENTRY TEXT**

The Court grants Plaintiff's cross-motion for sanctions [33] and orders Plaintiff's counsel to file an attorney's fee petition by 11/11/11.

■[ For further details see text below.]　　　　　　　　　　　　　　　　　　　　Notices mailed by Judicial staff.

## STATEMENT

Before the Court is Plaintiff's Cross-Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. For the following reasons, the Court grants Plaintiff's motion and orders Plaintiff's counsel to file an attorney's fee petition by November 11, 2011.

### FACTUAL BACKGROUND

On January 19, 2010, Plaintiff Tygris Asset Finance, Inc. ("Plaintiff") filed a two-count Complaint against Defendants Michael Abboud OBGYN, P.C. ("Abboud OBGYN") and Michael Abboud ("Abboud") (collectively "Defendants"), alleging breach of Equipment Lease Agreement ("Equipment Lease") and breach of Unconditional Guaranty ("Guaranty"). (R. 1, Complaint.) At that time, Plaintiff also issued two original summonses to Defendants. On February 5, 2010, a process server left copies of the Summons at Abboud's house with Joreta Sanchez, a domestic employee, which indicated that Abboud had to file a response to the Complaint by February 26, 2010. (R. 8.) On February 12, 2010, attorney Diana Bronstein sent a letter via a facsimile to the attorneys for Tygris on her legal letterhead. The letter specifically referenced "10 CV 339" – the civil number assigned to this case. The letter provided that Bronstein's firm "has been retained by the above referenced to handle this legal matter." (R. 26-1, Ex. C).

| | Courtroom Deputy Initials: | KF |
|---|---|---|

On February 17, 2010, a process server left copies of the Summons at Abboud OBGYN with "Nadejda Kmatcmatourisn [sic]," an employee at Abboud OBGYN, which indicated that Michael Abboud OBGYN P.C. had to file a response to the Complaint by March 10, 2010. (R. 13.) Plaintiff filed copies of the Return of Service on Abboud and the Return of Service on Abboud OBGYN in this Court on February 26, 2010 and March 16, 2010, respectively.[1] (R. 8; R. 13.)

Defendants did not answer the complaint or file an appearance in this case. Accordingly, on March 1, 2010, Plaintiff filed a motion for default and default judgment against Abboud and served Abboud and his counsel, Ms. Bronstein, with copies of the same. (R. 9.) On March 3, 2010, the motion for default and default judgment was sent and accepted at Ms. Bronstein's office and by Defendant. (R. 36-1, Ex. F.)

On March 17, 2010, Plaintiff filed an amended motion for default judgment against both Defendants. (R. 16.) Plaintiff sent the motion to both Ms. Bronstein and Defendant via Federal Express. (R. 26-1, Ex. 1, group H.) Defendants did not file an appearance or any responsive pleading in the case. Accordingly, on March 22, 2010, the Court granted Plaintiff's motion for default judgment, and entered a judgment against both Defendants. (R. 20.)

On April 8, 2010, Ms. Bronstein's office sent Tygris's counsel a fax containing the personal financials for Dr. Abboud. (R. 26-4.) The fax referenced "Dr. Michael Abboud, Index #10-CV-00339." (*Id.*) On April 14, 2010, counsel for Tygris sent an email to Ms. Bronstein and Khristina Khiger from her office, informing them that a judgment had been obtained against the Defendants. (*Id.*, Ex. K.) Between September 2010 and December 2010, Ms. Bronstein and counsel for Tygris engaged in written communications regarding this lawsuit. (R. 26-5.)

On March 18, 2011, Defendants filed an emergency motion to vacate the Court's March 22, 2010 default judgment and stay the Marshall's sale of Defendants' equipment in the Eastern District of New York. *See* Case No. 10-MC-794 (CBA) (E.D.N.Y.). The Honorable Carol B. Amon heard the motion on March 22, 2011 and granted a 30-day stay on the conditions that the Defendants 1) turn over the laser machine at issue in the default judgment; 2) post a $10,000 bond; and 3) file a motion to vacate the default judgment with this Court by March 28, 2010. (R. 38, Ex. 1 at 30.) She declined to rule on the motion to vacate, finding that Defendants brought their motion before the wrong court.

On March 28, 2011, Defendants filed a motion to re-open and vacate default judgment with this Court. (R. 23.) In their motion, Defendants contended that Plaintiff never served or notified either them or their attorney, Diana Bronstein, of the present action. (R. 23.) Defendants and Ms. Bronstein further asserted in affidavits submitted in support of the motion that they first became aware of the present action and this Court's default judgment in mid-March 2011, when a Marshal served Abboud with a Marshal's notice of sale and levy for

---

[1] Defendants asserted in their Motion to Vacate the Default Judgment (R. 30) that they were never served with process for the present action. Irina Abboud (Abboud's wife) filed a sworn affidavit wherein she stated, "I do not know who Joreta Sanchez is. We have never employed a Joreta Sanchez in our home." (R. 30-3, ¶ 7.) Similarly, Nadejda Khatchatourian filed a sworn affidavit wherein she stated, "I have never received, accepted or signed for any documents delivered to Dr. Abboud's office. I have never been approached by a process server during my employment with Dr. Abboud." (R. 30-4, ¶¶ 7-8.) Defendants did not, however, contest the validity of the Return of Service Forms that were filed in this Court, which indicate that servers left summonses for the present action with Ms. Sanchez and Ms. Khatchatourian. (R. 8; R. 13.)

the equipment in the Equipment Lease. (*Id.*) According to Defendants, after receiving the Marshal's notice, they notified Bronstein, who contacted the Eastern District of New York and learned about the present action and default judgment in this Court. (R. 23-2, ¶ 6.) Defendants presented numerous sworn affidavits and declarations from Ms. Bronstein, Mr. Abboud, Irina Abboud (Abboud's wife), and employees at both Abboud OBGYN and Ms. Bronstein's office, who all denied receipt of service or contend that no one was aware of the present action or the Court's default judgment until mid-March 2011. (R. 30-1; R.30-2; R. 30-3; R. 30-4; R. 30-5; R. 30-6; R. 30-7.) Defendants further claimed that a former employee fraudulently signed Abboud's name to the Equipment Lease. (R. 30 at 5.) Plaintiff opposed the motion and also moved for sanctions against Defendants and Ms. Bronstein under Rule 11 and 28 U.S.C. § 1927. (R. 33.)

On August 15, 2011, the Court denied Defendants' motion to re-open and vacate the default judgment and further ordered Ms. Bronstein to show cause why the Court should not order sanctions against her. (R. 36.) The Court found that Plaintiff introduced overwhelming, uncontested evidence that Ms. Bronstein represented Defendants in this matter and that she was fully aware of the present action both before and after the entry of default judgment. The Court further found that such evidence established that Plaintiff served Defendants and sent courtesy copies of all filed court documents for the present action to Defendants and Ms. Bronstein. The evidence also revealed that Ms. Bronstein and employees at her office sent Plaintiff messages via facsimile, e-mail, and voicemail that included the case number for the present action beginning as early as February 12, 2010–five days after Defendant Abboud was served with the Complaint. (R. 26, ¶ 4.) Ms. Bronstein made no attempt to explain this documentary evidence in Defendants' reply brief.

On August 29, 2011, Defendants filed a response to Plaintiff's motion for sanctions and the Court's order to show cause. On September 8, 2011, Plaintiff filed its reply.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 11(b), attorneys must certify to the best of their knowledge that any paper presented to a court is not presented for an improper purpose and that the factual contentions contained therein have evidentiary support. *Jimenez v. Madison Area Tech. Coll.,* 321 F.3d 652, 656 (7th Cir. 2003). Under Rule 11(c), a court, in its discretion, may impose sanctions on parties, their attorneys, or both for failing to comply with Rule 11(b). *Id.* (citing Fed. R. Civ. P. 11(c)). "Sanctions will be imposed if counsel files a complaint with improper motives or without adequate investigation." *Brunt v. Serv. Emp. Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002).

Furthermore, under 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Fednav Int'l Ltd. v. Cont'l Ins. Co.,* 624 F.3d 834, 838 n.1 (7th Cir. 2010). A district court may, in its discretion, impose sanctions under Section 1927 if an attorney acts in an "objectively unreasonable manner" and engages in "serious and studied disregard for the orderly process of justice." *HK Sys., Inc. v. Eaton Corp.*, 353 Fed. Appx. 44, 45 (7th Cir. 2009) (citing *Jolly Grp., Ltd. v. Medline Indus., Inc.,* 435 F.3d 717, 720 (7th Cir. 2006)); *see also Tillman v. New Line Cinema,* 374 Fed. Appx. 664, 665 (7th Cir. 2010).

## ANALYSIS

Ms. Bronstein advances several arguments why the Court should not impose sanctions on her pursuant to Rule 11 and § 1927, each of which the Court addresses below.

Ms. Bronstein's primary argument continues to be that she was unaware of this case until mid-March 2011. She asserts a brand new fact, however, which she did not assert in her motion to vacate the default judgment or her reply brief in support of same. Specifically, she claims that Defendants engaged her to represent them solely to renegotiate the terms of the lease agreement and not to litigate the case. Therefore, she argues, even though she referenced the case number in her correspondence with Plaintiff's attorneys, she did not know about the pendency of this litigation.[2] Ms. Bronstein, however, offers no evidence–such as an engagement letter or an affidavit from her client–to substantiate her assertion that Defendant engaged her to renegotiate the lease agreement and not to litigate the case. Indeed, Ms. Bronstein does not even put this assertion in an affidavit. The fact that she did not mention this purported fact in her briefing on her motion to vacate the judgment is also telling. Moreover, as this Court has already found, the overwhelming and uncontradicted evidence shows that Ms. Bronstein knew about this lawsuit as early as February 12, 2010–one week after Defendant Abboud was served with the Complaint. (R. 36, Order.) Among other things, the evidence shows that Ms. Bronstein communicated with Plaintiff's counsel repeatedly between February 12, 2010 and mid-March 2011, and that she and her employees referenced repeatedly, in emails, faxes and voicemails, the case number (10-cv-339) and the Court's default judgment. The fact that Ms. Bronstein continues to assert to the Court that she did not know about the lawsuit, in the face of uncontradicted evidence to the contrary and the Court's earlier findings, is concerning.

Ms. Bronstein also argues that she filed the motion to vacate in this Court because Judge Amon in the Eastern District of New York ordered her to. She is correct that Judge Amon granted Ms. Bronstein's request for a 30-day stay of the Marshal's sale on the condition that Ms. Bronstein, among other things, file a motion to vacate the default judgment in this Court by March 28, 2011. (R. 38, Ex. 1 at 30.) Judge Amon, however, based her decision on Ms. Bronstein's representations that the Defendants were not properly served. In the Court's August 15, 2011 Order, this Court found that the overwhelming evidence "flatly contradicted" those assertions.

Moreover, Ms. Bronstein's argument sidesteps a key fact–namely, that it was inappropriate for her to bring a motion to vacate the Court's default judgment in federal court in New York in the first place, and that only because of her inappropriate conduct in doing the same, along with her apparent misrepresentations to Judge Amon, did Judge Amon order her to file such a motion here.[3] Indeed, the transcript from the hearing before Judge Amon reveals that Ms. Bronstein could not even state under which rule she was moving to vacate the default judgment and that, given the emergency nature of Ms. Bronstein's motion, Judge Amon knew very little, if anything, about this action and had not read the Complaint in this case. It is also clear that Judge Amon made no determinations on the merits of Ms. Bronstein's motion to vacate and instead determined that the proper forum for her arguments was before this Court and not before Judge Amon. Therefore, Ms. Bronstein's reliance on Judge Amon's order does not provide justification for her improper conduct in filing the motion to vacate in the first place in New York, much less again in Illinois (with sworn affidavits containing false allegations). Further,

---

[2] As the Court found in its Order denying the motion to vacate, Ms. Bronstein sent a fax to Plaintiff's counsel on February 12, 2010, five days after Mr. Abboud was served with the Complaint, notifying Plaintiff's counsel that her "firm has been retained by the above referenced to handle this legal matter." Ms. Bronstein fails to explain how she knew about the case number, 10-cv-339, as of February 12, 2010 if, as she asserts, neither she nor her client were served with the Complaint.

[3] Ms. Bronstein provides no justification for filing a motion to vacate the Court's default judgment in the Eastern District of New York. Clearly, the only appropriate place for Ms. Bronstein to file a motion to vacate a court's order under Rule 60(b) is with the court that issued the initial order.

Judge Amon's order does not provide a reasonable basis for Ms. Bronstein's continued assertions, in the face of clear evidence to the contrary, in her reply brief that she and her clients were unaware of this lawsuit until mid-March 2011. *See Tillman*, 374 Fed. Appx. at 666 (A party pursues an "objectively unreasonable course" when it proceeds with litigation in the face of evidence showing it has no chance to prevail.).

     Ms. Bronstein next suggests that because she is a sole practitioner, the Court should excuse her conduct. Specifically, she states that she "is a solo-practitioner who relies heavily on interns and a secretary to run the daily operations of her day to day law practice" and that "[i]t is very likely that all papers going to her office were not reviewed or seen by her." (R. 37, Defs' Resp. to Mot. for Sanctions, ¶¶ 10, 29.) Ms. Bronstein's assertions are not only unconvincing, they also contradict earlier sworn testimony she submitted to this Court. Specifically, in her affidavit submitted in support of Defendants' motion to vacate, she stated as follows: " All of the mail in my office is forwarded to me. I review everything that passes through my office. I have never received any legal documents or notifications in regards to the above-captioned matter." (R. 23-2 at ¶ 4.) Filing multiple motions and sworn affidavits containing false allegations is precisely the type of egregious conduct that warrants sanctions under both Rule 11 and § 1927. *See*, *e.g.*, *Tillman,* 374 Fed. Appx. at 665; *Jimenez,* 321 F.3d at 657 (noting that the plaintiff's false allegations amounted to a "veritable attack on our system of justice").

     The Court is also unpersuaded by Ms. Bronstein's argument the Court should not impose sanctions because neither she nor her clients are likely to "engage in similar conduct either in Illinois or New York" in the future. (Defs' Resp., ¶ 24.) Ms. Bronstein's argument misses the point. Whether she or her client will engage in improper conduct in the future does not address the harm Plaintiff's counsel suffered in having to respond to multiple improper and baseless filings. "Sanctions under § 1927 are meant to compensate the party that has been injured by a lawyer's bad-faith conduct and to compel the lawyer to bear the costs of his own lack of care." *Tillman*, 374 Fed. Appx. at 666-67 (citing *Shales v. Gen. Chauffeurs, Sales Drivers & Helpers Local Union No. 330*, 557 F.3d 726, 749 (7th Cir. 2009) and *Ordower v. Feldman*, 86 F.2d 1569, 1574 (7th Cir. 1987)).

     Finally, Ms. Bronstein's attempt to shift blame for her conduct onto Plaintiff's counsel is inappropriate. Whether Plaintiff's New York counsel was "deceitful" in post-judgment negotiations, an issue on which the Court expresses no opinion, has no bearing on Ms. Bronstein's conduct at issue here.

     Ms. Bronstein has expressed an unwillingness to take responsibility for failing to act with diligence in this lawsuit despite significant evidence that she and her clients were aware of the case shortly after Plaintiff filed its Complaint. Worse, she has multiplied the proceedings through filing baseless pleadings and affidavits that flatly contradict documentary evidence. Her improper conduct has forced Plaintiff's counsel to respond to repeated filings.

     In light of all of the above, the Court imposes sanctions on Ms. Bronstein in the amount of Plaintiff's counsel's attorney's fees incurred in connection with the preparation of Plaintiff's response and sur-reply briefs opposing Defendants' motion to vacate the default judgment**.**

## CONCLUSION

     For all of the above reasons, the Court grants Plaintiff's motion for sanctions and further orders Plaintiff's counsel to file a fee petition by November 11, 2011.